**RECORD NO. 14-1447**

In The

# United States Court Of Appeals
## For The Fourth Circuit

**NATIONWIDE MUTUAL INSURANCE COMPANY,**
**as successor by merger to Harleysville Mutual Insurance Company,**

*Plaintiff – Appellee,*

v.

**SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA,**

*Defendant – Appellant,*

**and**

**WELL SERVICE GROUP, INC.; JOSHUA UNDERWOOD;**
**DIAMOND TECHNICAL SERVICES, INC.,**

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

———————

**BRIEF OF APPELLANT**

———————

Kenneth M. Portner
WEBER GALLAGHER
 SIMPSON STAPLETON
 FIRES & NEWBY
2000 Market Street
Suite 1300
Philadelphia, PA  19103
(215) 972-7921

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street  ♦  Suite 230  ♦  Richmond, VA  23219
804-249-7770  ♦  www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. 14-1447       Caption: Nationwide Mutual Insurance Company vs. Selective Ins Co of SC

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

Selective Insurance Company of South Carolina
_____

who is _____ appellant _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?                           ☑ YES ☐ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
     Apellant is a subsidiary of Selective Insurance Group, Inc.

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                        ☑ YES ☐ NO
    If yes, identify all such owners:
     Selective Insurance Group, Inc.

10/28/2013 SCC                          - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: ____May 19, 2014____

Counsel for: __Appellant_____

# CERTIFICATE OF SERVICE
****************************

I certify that on ____May 19, 2014____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Dapper, Baldasare, Benson, Behling & Kane, P.C.
Brian S. Kane, Esquire
Four Gateway Center, Tenth Floor
444 Liberty Avenue
Pittsbirgh, PA 15222

_____          ____May 19, 2014____
(signature)                                (date)

- 2 -

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES ...........................................................1

STATEMENT OF THE CASE ...............................................................2

     Statement of Facts.......................................................................3

     Purchase of the Truck .................................................................4

     The Motor Vehicle Accident and Insurance Coverage Dispute.....................5

SUMMARY OF THE ARGUMENT .....................................................8

ARGUMENT .........................................................................................9

     STANDARD OF REVIEW ..........................................................9

     DTS HOLDS TITLE TO THE TRUCK AND THUS "OWNS" THE TRUCK WITHIN THE MEANING OF THE HARLEYSVILLE POLICY .......................................................................................10

     THE HARLEYSVILLE POLICY IS AMBIGUOUS AND SHOULD BE CONSTRUED IN FAVOR OF THE INSUREDS.................................14

     THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER DTS SATISFIED THE ELEMENTS OF EQUITABLE OWNERSHIP .............................................................................16

CONCLUSION ....................................................................................18

REQUEST FOR ORAL ARGUMENT ................................................18

i

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Aetna Cas. & Sur. Co. v. Duncan,
  972 F.2d 523 (3d Cir. 1992) ...................................................................12, 17

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986).......................................................................................17

Auto. Ins. Co. v. Curran,
  994 F. Supp. 324 (E.D. Pa. 1998).................................................................11

Cicconi Auto Body v. Nationwide Ins. Co.,
  904 A.2d 933 (Pa. Super. 2006) ....................................................................13

Department of Transportation v. Walker,
  136 Pa. Cmwlth. 704, 584 A.2d 1080 (1990)...............................................12

Federal Kemper Ins. Co. v. Ward,
  679 F. Supp. 489 (E.D. Pa. 1988), aff'd,
  860 F.2d 1074 (3d Cir. 1988) ........................................................................12

Folmar v. Hartford Accidental & Indem. Co.,
  363 A.2d 1304 (Pa. Super. Ct. 1976) ............................................................12

Hutchison v. Sunbeam Coal Corp.,
  519 A.2d 385 (Pa. 1986).................................................................................15

K & Lee Corp. v. Scottsdale Insurance Co.,
  769 F. Supp. 870 (E.D. Pa. 1991)..................................................................15

Kvaerner Metals Div. of Kvaemer U.S. v. Commercial Union Ins. Co.,
  589 Pa. 317, 908 A.2d 888 (2006)..............................................................9, 14

Madison Const. Co. v. Harleysville Mut. Ins. Co.,
  557 Pa. 595, 735 A.2d 100 (1999).....................................................10, 15, 16

Mohn v. American Casualty Co. of Reading,
    326 A.2d 346 (Pa. 1974)........................................................ 14-15

Nat'l Grange Mut. Ins. Co. v. Mut. Benefit Ins. Co.,
    364 F. App'x 765 (3d Cir. 2010)............................................11, 13

News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.,
    597 F.3d 570 (4th Cir. 2010) ...........................................17

Occidental Fire & Cas. Co. of N. Carolina v. Brocious,
    772 F.2d 47 (3d Cir. 1985) ...........................................10

Pennsylvania Mfrs. Ass'n Ins. Co. v. Aetna Casualty & Sur. Ins. Co.,
    233 A.2d 548 (Pa. 1967)...........................................14

Perini Corp. v. Perini Constr., Inc.,
    915 F.2d 121 (4th Cir. 1990) ...........................................9

St. Paul Fire and Marine Insurance Co. v. Lewis,
    935 F.2d 1428 (3d Cir. 1991) ...........................................15

Wasilko v. Home Mut. Cas. Co.,
    210 Pa. Super. 322, 232 A.2d 60 (Pa. Super. Ct. 1967)...................11, 12, 17

**Statutes**

28 U.S.C. § 1291 ...........................................1

28 U.S.C. § 1332 ...........................................1

75 Pa. C.S. § 102...........................................10, 13

**Rule**

Fed. R. Civ. P. 56(c)...........................................9, 17

iv

## JURISDICTIONAL STATEMENT

The United States District Court for the District of West Virginia had jurisdiction over this action pursuant to 28 U.S.C. § 1332.  On April 8, 2014, the District Court granted the motion for summary judgment of Appellee, Nationwide Mutual Insurance Company as successor by merger to Harleysville Mutual Insurance Company ("Nationwide") and denied the motion for summary judgment of Appellant, Selective Insurance Company of South Carolina ("Selective"). Selective timely filed its notice of appeal on May 2, 2014.  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Whether the district court erred as a matter of law by holding that the title holder of a vehicle is not an "owner" of the vehicle when Pennsylvania statutes and case law hold that a title holder is an owner of a vehicle even where the vehicle may also have equitable owners.

Whether the district court erred as a matter of law by failing to properly apply the rule of contract construction which holds that any ambiguity in an insurance policy is construed against the insurer and in favor of coverage where the insurance policy at issue did not define the term "owned" or "owner" and where Selective proferred a reasonable definition that the title holder is an "owner."

Whether the district court erred as a matter of law in granting summary judgment in favor of Nationwide where a genuine issue of material fact existed as to whether Diamond Technical Services maintained sufficient control over the vehicle in question so as to constitute an "owner" of the vehicle.

## STATEMENT OF THE CASE

This appeal arises from a dispute concerning insurance coverage for Wells Service Group, Inc. ("WSG") and its employee, Joshua Underwood ("Underwood") under an insurance policy issued by Harleysville to Diamond Technical Services, Inc. ("DTS").

On October 1, 2012 Underwood was driving a 2011 Chevrolet Silverado truck that was registered and titled to DTS (the "Truck") when he rear-ended a motor vehicle being driven by Ms. Terrie Schulman. JA 103-114, 331. Ms. Schulman suffered serious injuries and died. The estate of Ms. Schulman has asserted a claim for damages against Underwood and WSG as a result of the accident.

At the time of the accident, WSG was insured under a Commercial Package insurance policy issued by Selective. JA 79-101. DTS was insured under a Commercial Auto insurance policy issued by Harleysville. JA 40-77. The Harleysville policy provided coverage to any person operating a vehicle owned by DTS. JA 531.

Harleysville brought a declaratory judgment action in the district court seeking a declaration that it had no duty to defend or indemnify WSG and/or Underwood against the estate's claims. JA 8-16.  The issue before the district court was whether under Pennsylvania law WSG and Underwood were insureds under the Harleysville policy where the vehicle Underwood was operating at the time of the accident was titled to and registered to DTS.  Harleysville and Selective filed cross-motions for summary judgment.  On April 8, 2014, the district court entered an order granting Harleysville's motion for summary judgment and denying Selective's.  JA 542-554.  The district court concluded that despite the fact that DTS held title to the vehicle, it did not own the vehicle within the meaning of the Harleysville policy and therefore Underwood and WSG were not insureds entitled to defense and indemnity.  JA542-554.

Selective filed this timely appeal. JA 556-557.

## Statement of Facts

WSG and DTS are closely held companies that share common ownership. JA 417, 426-427.  DTS was formed in 1999 by David Diamond ("Diamond") and Richard Brennan ("Brennan").  JA 320-321.  DTS is currently owned by Diamond, Brennan, Troy Dolan ("Dolan"), and Ralph Hill ("Hill").  JA 320-321. DTS is in the business of inspecting boilers and performing non-destructive examination and testing for the gas and oil industry.  JA 321-322.

3

WSG was formed in October 2011 by Diamond, Brennan, Dolan, and Brad McCuen ("McCuen"). JA 325, 327. WSG provides labor and services to the gas and oil industry. JA 325. Brennan is the president of both DTS and WSG. JA 417. The headquarters of both companies are located at the same address in Pennsylvania. JA 334.

### Purchase of the Truck

In June 2012, DTS entered into an agreement to purchase the Truck from an auto dealer in Greensburg, Pennsylvania. JA 424, 437-438, 446, 512. DTS also entered into an installment sales contract to finance the Truck's purchase. JA 446, 514. The Truck was registered to DTS in Pennsylvania, and DTS is listed as the owner on the Truck's certificate of title. JA 448.

Although DTS was the legal purchaser of the Truck, it was intended for WSG's use. JA 445-446. DTS purchased the truck because WSG, as a new company, had weaker credit than DTS. JA 345-346, 455-457. WSG made the loan payments for the Truck, but DTS was financially responsible for the loan. JA 449-451. DTS and WSG planned to transfer title to WSG after WSG paid off the loan, but if WSG failed to pay off the loan, DTS would retain ownership of the Truck. JA 454-455, 482, 487, 490. DTS understood that the Truck was owned by DTS. JA 468, 472.

4

WSG's use of the Truck was subject to the terms of a "Blanket Equipment Lease." (the Lease). JA 459. While the written lease document was not created until October 2012, the understanding between DTS and WSG regarding their obligations with regard to the Truck was in effect prior to the creation of that document. JA 459, 464-467. This is demonstrated by the fact that the document states that it is effective as of October 1, 2011, prior to the date of the motor vehicle accident. JA 466-467. The written Lease further states that its provisions were effective as of October 1, 2011, regardless of the date on which the document was executed. JA 467, 516.

The Lease provides that DTS was leasing certain equipment (including the Truck) owned by DTS to WSG. JA 516. Under the heading "Ownership and Status of Equipment," the Lease states that "[DTS] shall be deemed to have retained title at all times unless the Lessor transfers title by sale." JA 518. The Lease also provides that DTS maintained the right to inspect the equipment subject to the Lease, the right to demand the equipment's return, and the right to control alterations made to equipment subject to the Lease. JA 487, 517.

### The Motor Vehicle Accident and Insurance Coverage Dispute

On October 1, 2012 Underwood was driving the Truck on Interstate 79 near Bridgeport, West Virginia in the course and scope of his employment for WSG. JA 331. The Truck collided with a vehicle operated by Ms. Schulman. JA 103-

110.   Ms. Schulman suffered serious bodily injury as a result of the accident and died.   JA 10.   Ms. Schulman's estate asserted a claim against WSG and Underwood.

DTS reported the accident to Harleysville, its Commercial Auto insurer.  JA 470.  DTS told Harleysville that the Truck was owned by DTS and leased to WSG.  JA 471.  Selective also notified Harleysville of the Schulman claim and tendered coverage under the Harleysville policy on behalf of WSG and Underwood.  JA 29.

The Harleysville policy provides coverage for, in pertinent part, any person using an auto owned by DTS with DTS's permission.  JA 531.  Specifically, the policy states that Harleysville will provide coverage for all sums an "insured" legally must pay as damages because of "bodily injury" caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."  JA 531.  Under the Harleysville policy covered "auto" means "any auto".  JA 524, 530.

The term "insured" means, in pertinent part,

**b.**     Anyone else while using with your permission a covered "auto" you own, hire or borrow. ..

JA 530.  The policy does not define the term "own."

Harleysville denied coverage for WSG and Underwood, taking the position that the Truck was owned by WSG, not DTS, and that WSG and Underwood were therefore not insureds under the policy.

6

On March 1, 2013, Nationwide, successor by merger to Harleysville, initiated this declaratory judgment action against Selective seeking a declaration that WSG was the "owner" of the Truck and that Nationwide had no duty to defend or indemnify WSG or Underwood with respect to any claim related to the motor vehicle accident. JA 8-16. Selective filed its Answer with Affirmative Defenses on May 9, 2013. JA 17-23. Nationwide and Selective both filed motions for summary judgment. JA 28-38, 307-313.

On April 8, 2014, United States District Judge Irene M. Keeley issued a memorandum opinion on the cross-motions for summary judgment. JA 542-554. Judge Keeley acknowledged that the Pennsylvania Vehicle Code provides that the title holder of a vehicle is an owner of the vehicle and that the Superior Court of Pennsylvania[1], the United States District Court for the Eastern District of Pennsylvania, and the United States Third Circuit Court of Appeals have all held that the title holder is an owner of a vehicle. JA 548-551. Nonetheless, Judge Keeley decided that these cases diverged from a long-standing rule of Pennsylvania law that a certificate of title is not conclusive on the question of ownership where a party other than the title holder claims ownership. JA 551. Based on this reasoning, Judge Keeley concluded that DTS did not own the Truck

---

[1] One of Pennsylvania's intermediate appellate courts.

7

and that therefore Nationwide had no duty to defend or indemnify WSG and/or Underwood.  JA 553-554.  Selective filed this timely appeal. JA 556-557.

## SUMMARY OF THE ARGUMENT

The district court erred in concluding that DTS, the title holder, is not an owner of the Truck within the meaning of the Harleysville policy.

First, Pennsylvania statutory and decisional law mandate the conclusion that the title holder of a vehicle is an owner of the vehicle as a matter of law.

Moreover, the Harleysville policy does not define the terms, "own", "owner", or "owned" and the terms as used in the policy are at best ambiguous. Under the rules of construction applicable to insurance policies, that ambiguity must be interpreted against Harleysville and in favor of the conclusion that DTS, which holds title to the Truck, is an owner.

The rule relied on by the district court-- that title is not conclusive evidence of ownership—applies only where the issue is whether a party other than the title holder is an owner.  Therefore, the rule is inapposite and does not dictate the conclusion that DTS is not an owner of the Truck.

Finally, even if the Court concludes that DTS is not an owner as a matter of law, there is a genuine issue of material fact as to whether DTS exercised the requisite control, responsibility for and disposition of the Truck to meet the

definition of equitable ownership and the case should be remanded to the district court for further proceedings.

## ARGUMENT

## <u>STANDARD OF REVIEW</u>

This Court reviews a grant of summary judgment *de novo*, applying the same standard as the district court, but without deference to the district court. <u>Perini Corp. v. Perini Constr., Inc.</u>, 915 F.2d 121, 123 (4th Cir. 1990). Under Federal Rule of Civil Procedure 56(c), summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,… show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Pennsylvania's substantive law applies to this case. Under Pennsylvania law the interpretation of an insurance policy is a question of law. <u>Kvaerner Metals Div. of Kvaemer U.S. v. Commercial Union Ins. Co.</u>, 589 Pa. 317, 908 A.2d 888, 897 (2006). The Court's primary goal in interpreting an insurance policy, as with interpreting any contract, is to ascertain the parties' intentions as manifested by the policy's terms. <u>Id.</u>  When the language of the insurance policy is clear and unambiguous, the court must give effect to that language. <u>Id.</u>  When the language of the policy is ambiguous however, the policy provision is to be construed against

9

the insurer, the drafter of the agreement, and in favor of coverage. <u>Madison Const.
Co. v. Harleysville Mut. Ins. Co.</u>, 557 Pa. 595, 606, 735 A.2d 100, 106 (1999).

## DTS HOLDS TITLE TO THE TRUCK AND THUS "OWNS" THE TRUCK WITHIN THE MEANING OF THE HARLEYSVILLE POLICY.

The issue before the Court is whether DTS "owns" the Truck within the
meaning of the Harleysville policy.  Since the Harleysville policy does not define
the term "own", that term must be construed in its natural, plain and ordinary
sense.  <u>Madison Const. Co. v. Harleysville Mut. Ins. Co.</u>, 557 Pa. 595, 735 A.2d
100 (1999).

Under Pennsylvania law the ordinary meaning of the term "owner" includes
the person who holds title to the vehicle. <u>75 Pa. C.S. § 102</u>.  Specifically, the
Pennsylvania Vehicle Code, which applies to all vehicles registered in
Pennsylvania (as the Truck is), defines "owner" as follows:

> **"Owner."** *A person*, other than a lienholder, ***having*** the property right
> in or ***title to a vehicle.*** The term includes a person entitled to the use
> and possession of a vehicle subject to a security interest in another
> person, but excludes a lessee under a lease not intended as security.

<u>75 Pa. C.S. § 102</u> (Emphasis added).

Relying on the Vehicle Code, the Third Circuit Court of Appeals (construing
Pennsylvania law) held that a vehicle's title holder was an owner of a vehicle in
circumstances similar to those presented here. <u>Occidental Fire & Cas. Co. of N.
Carolina v. Brocious</u>, 772 F.2d 47 (3d Cir. 1985).  <u>Brocious</u> involved coverage for

10

a vehicle subject to a conditional sales agreement.  Seller sold the vehicle to buyer, and while the buyer had exclusive possession and use of the vehicle, the seller retained the title until all payments were made. The buyer purchased an insurance policy from insurer for the vehicle and the policy listed the seller as the named insured and the buyer as an authorized driver.  When the vehicle was involved in an accident and the buyer sought coverage under the policy, the insurer denied coverage on the basis that the buyer was not an insured since he was not driving a vehicle owned by the named insured at the time of the accident.   The court held that the seller as title holder was an owner of the vehicle even though the other elements of ownership resided with buyer.  See also Nat'l Grange Mut. Ins. Co. v. Mut. Benefit Ins. Co., 364 F. App'x 765, 768 (3d Cir. 2010)(a title holder is an owner of a vehicle).

There is no dispute that DTS holds title to the Truck.  Thus, based on the definition of owner under the Pennsylvania Vehicle Code, DTS is the owner of the Truck.

Selective acknowledges that there is a long line of Pennsylvania cases holding that a certificate of title is evidence of ownership, but not conclusive on the issue.  JA 550.  The issue in those cases was whether a party other than the title holder was an owner.   Wasilko v. Home Mut. Cas. Co., 232 A.2d 60, 61 (Pa. Super. Ct. 1967); Auto. Ins. Co. v. Curran, 994 F. Supp. 324, 330 (E.D. Pa. 1998);

Federal Kemper Ins. Co. v. Ward, 679 F. Supp. 489, 492 (E.D. Pa. 1988); Folmar
v. Hartford Accidental & Indem. Co., 363 A.2d 1304, 1307 (Pa. Super. Ct. 1976).
The courts uniformly hold that a vehicle can have both a title owner and one or
more equitable owners. Department of Transportation v. Walker, 136 Pa. Cmwlth.
704, 584 A.2d 1080 (1990)(there may be both a legal and an equitable owner of a
motor vehicle); Fed. Kemper Ins. Co. v. Ward, 679 F. Supp. 489, 492 (E.D. Pa.
1988) aff'd, 860 F.2d 1074 (3d Cir. 1988)(vehicle was jointly owned by engaged
couple where vehicle was titled in only one of them while the other enjoyed
substantial use). In determining whether a party is an equitable owner of a vehicle,
the courts look to whether the putative owner possesses the attributes commonly
associated with ownership. Aetna Cas. & Sur. Co. v. Duncan, 972 F.2d 523, 526
(3d Cir. 1992). These are the use, benefit, possession, control, responsibility for,
and right to dispose of the automobile. Wasilko v. Home Mutual Casualty Co.,
210 Pa. Super. 322, 326, 232 A.2d 60 (1967).

    While well-established, the cited case law is inapposite here because the
issue is different. The issue in the instant case is not whether a party other than the
title holder (e.g., WSG) is an owner of the Truck. Selective does not dispute that
WSG is an equitable owner of the Truck. Instead, the issue presented in the
instant case is whether the title holder, DTS, is an owner of the Truck by virtue of
the fact that it holds title. The answer to that question is undoubtedly, yes.

First, as noted above, Pennsylvania statutory law makes clear that the title holder is an owner of a vehicle. Moreover, when faced with the precise issue presented in this case the Pennsylvania Superior Court concluded that the title holder was an owner. Cicconi Auto Body v. Nationwide Ins. Co., 904 A.2d 933 (Pa. Super. 2006). In Cicconi, the court explained that where a party holds title to a vehicle, it will be an owner of the vehicle. The court made clear that the cases that refer to title as a "mere indicator" of ownership are inapposite because they address whether "someone **other than the titleholder** may be **also** deemed an 'owner' of the vehicle . . ." Cicconi, 904 A.2d at 937 (Pa. Super. 2006) (emphasis in the original).

> Nationwide cites well-established case law for the proposition that title is a mere **indicator** of ownership, but is not dispositive. . . Those cases generally establish that someone **other than the titleholder** may be **also** deemed an "owner" of the vehicle, by virtue of having sufficient possessory rights to the vehicle. Those cases do not abrogate the fact that the titleholder remains an owner under § 102.

Cicconi Auto Body v. Nationwide Ins. Co., 904 A.2d 933 (Pa. Super. 2006)(emphasis in the original)(citations omitted); Nat'l Grange Mut. Ins. Co. v. Mut. Benefit Ins. Co., 364 F. App'x 765, 768 (3d Cir. 2010)(existence of other owners in addition to title holder does not abrogate fact that title holder is owner under Pennsylvania law). Thus, the title holder is the owner of the vehicle, regardless of whether there are other equitable owners of the vehicle.

13

Here, there is no dispute that DTS is the title holder of the Truck. Accordingly, DTS is an owner of the Truck and WSG and Underwood are insureds under the Harleysville policy. Thus Nationwide has a duty to defend and indemnify WSG and Underwood against the claim asserted by the estate of Ms. Schulman and the decision of the district court should be reversed.

## THE HARLEYSVILLE POLICY IS AMBIGUOUS AND SHOULD BE CONSTRUED IN FAVOR OF THE INSUREDS

Even if the Court does not conclude that the only reasonable interpretation of the term "owner" is that it includes a vehicle's title holder, the Court should nonetheless rule in Selective's favor because the term is ambiguous and that ambiguity must be interpreted in favor of coverage under the Harleysville policy.

The Court's primary goal in interpreting an insurance policy is to ascertain the parties' intentions as manifested by the policy's terms. Kvaerner Metals Div. of Kvaemer U.S. v. Commercial Union Ins. Co., 589 Pa. 317, 908 A.2d 888, 897 (2006). When the language of the insurance policy is clear and unambiguous, the court must give effect to that language. Id. Unambiguous terms are to be given their "plain and ordinary meaning." Pennsylvania Mfrs. Ass'n Ins. Co. v. Aetna Casualty & Sur. Ins. Co., 233 A.2d 548, 551 (Pa. 1967).

However, when the language of the policy is ambiguous, the policy provision is to be construed strictly against the insurer, the drafter of the agreement, and in favor of coverage. Mohn v. American Casualty Co. of Reading,

326 A.2d 346, 351 (Pa. 1974); <u>Madison Const. Co. v. Harleysville Mut. Ins. Co.</u>, 557 Pa. 595, 606, 735 A.2d 100, 106 (1999). The policy provision will be considered ambiguous if it is reasonably susceptible to different constructions and capable of being understood in more than one sense. <u>Hutchison v. Sunbeam Coal Corp.</u>, 519 A.2d 385, 390 (Pa. 1986); <u>K & Lee Corp. v. Scottsdale Insurance Co.</u>, 769 F. Supp. 870, 873 (E.D. Pa. 1991)(applying Pennsylvania law). In making this determination, courts must consider the actual words of the agreement itself as well as any alternative meanings offered by counsel, and extrinsic evidence offered in support of those alternative meanings. <u>St. Paul Fire and Marine Insurance Co. v. Lewis</u>, 935 F.2d 1428, 1431 (3d Cir. 1991)(applying Pennsylvania law). Thus, if the Court concludes that the interpretation proffered by Selective is a reasonable interpretation it should be accepted, even if Selective's proffered interpretation is not the only reasonable one. <u>St. Paul</u>, 935 F.2d at 1431.

Here, the Harleysville policy provides coverage for any person using an auto owned by DTS. The word "own" is not qualified in any way. Nationwide's position is that "own" means equitable ownership. However, there is no indication in the Harleysville policy that the word is limited to equitable owners. If Harleysville's intent was to limit coverage to vehicles of which the named insured was the equitable owner, it could have said so in the policy. The policy includes no such limitation.

15

Selective proffered the reasonable definition of "own" as defined under the Pennsylvania Vehicle Code, which includes the title holder of the vehicle. Thus, Selective and Nationwide each provided distinct, but reasonable definitions of the word "own" under the Harleysville policy and the language was clearly susceptible to different constructions. As the Harleysville policy simply states that it provides coverage for any person using an auto owned by DTS, it is equally reasonable to interpret the language as extending coverage to vehicles both equitably and legally owned by the named insured and the word "own" under the Harleysville policy is ambiguous.

Under the rules of construction applicable in Pennsylvania, this ambiguity in the Harleysville policy would be interpreted against Harleysville and in favor of coverage. Madison Const. Co. v. Harleysville Mut. Ins. Co., 557 Pa. 595, 606, 735 A.2d 100, 106 (1999). Thus, the district court erred in concluding that Harleysville has no duty to defend or indemnify WSG or Underwood and the decision of the district court should be reversed.

## THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER DTS SATISFIED THE ELEMENTS OF EQUITABLE OWNERSHIP

Finally, even if the Court concludes that DTS's status as title holder does not mean that DTS is an owner as a matter of law, the district court should not have granted summary judgment in favor of Nationwide since the question of whether DTS maintained sufficient control over the Truck to make DTS an equitable owner

16

presented a genuine issue of material fact that precluded judgment as a matter of law.

Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,… show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue" of fact exists "when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

In determining whether a party is an equitable owner of a vehicle, the courts look to whether the putative owner possesses the attributes commonly associated with ownership. Aetna Cas. & Sur. Co. v. Duncan, 972 F.2d 523, 526 (3d Cir. 1992). These are the use, benefit, possession, control, responsibility for, and right to dispose of the automobile. Wasilko v. Home Mutual Casualty Co., 210 Pa. Super. 322, 326, 232 A.2d 60 (1967).

In addition to being the title holder, DTS maintained an element of control over the Truck and maintained the right to dispose of it. The lease between DTS and WSG, which was in effect prior to the accident even though it was reduced to writing only subsequent to the accident, demonstrates DTS's and WSG's intent

17

that DTS maintain the right of control and the right to dispose of the vehicle. JA 459, 464-467, 516-518. The Lease provides that DTS has the right to inspect the Truck. JA 517. It gave DTS the right to approve alterations. JA 517. And, most importantly, it gave DTS the ultimate right to control disposition of the Truck. JA 517. WSG was obligated to return the Truck to DTS and WSG could not permit the equipment to be used by anyone other than WSG without DTS's prior written consent. JA 517.

Thus, DTS clearly possessed elements that are commonly associated with ownership and there were genuine issues of fact as to whether DTS's control of the Truck and the right to dispose of the truck satisfied the elements of equitable ownership.

Thus, the district court erred in granting judgment in favor of Nationwide and its decision should be reversed and remanded for further proceedings.

## CONCLUSION

For the foregoing reasons, Selective respectfully submits that the judgment of the district court should be reversed and judgment should be entered in favor of Selective or this matter should be remanded to the district court for further proceedings.

## REQUEST FOR ORAL ARGUMENT

Appellant, Selective, respectfully requests oral argument.

Respectfully submitted,

Kenneth M. Portner
Kenneth M. Portner
WEBER GALLAGHER SIMPSON
 STAPLETON FIRES & NEWBY
2000 Market Street
Suite 1300
Philadelphia, PA  19103
(215) 972-7921

*Counsel for Appellant*

**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**
Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(B) because:

this brief contains 4,251 words, excluding the parts of the brief
exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

this brief has been prepared in a proportional spaced typeface using
Microsoft Word in 14 point Times New Roman.

/s/  Kenneth M. Portner
Kenneth M. Portner

*Counsel for Appellant*

Dated:  June 30, 2014

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on June 30, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Brian S. Kane
DAPPER BALDASARE BENSON
 BEHLING & KANE, PC
444 Liberty Avenue
10th Floor
Pittsburgh, PA  15222

*Counsel for Appellee*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/  Adrienne R. Acra-Passehl
Adrienne R. Acra-Passehl
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street, Suite 230
Richmond, VA  23219